IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| DEION L. TURNER, | ) | |
| | ) | |
| Petitioner, | ) | No. 05 C 2890 |
| | ) | |
| v. | ) | Judge Mark Filip |
| | ) | |
| COUNTY OF COOK, et al. | ) | |
| | ) | |
| Respondents. | ) | |

MEMORANDUM OPINION AND ORDER

Deion L. Turner ("Petitioner" or "Turner") has filed what he deems "a petition for a writ of mandamus" alleging a broad conspiracy to deprive him of his constitutional rights. Turner has previously litigated the vast bulk of the issues he presents in this case, and those cases have repeatedly been resolved against him in this courthouse, and apparently in the courts of the State of Illinois as well. This matter was initially before the Court for consideration of Petitioner's application for leave to proceed *in forma pauperis*. (D.E. 4.)[1] Petitioner now seeks leave to withdraw that motion, and instead requests that the Court permit him to pay the filing fees in installment payments. (D.E. 21.)

For the reasons explained below, the Court, pursuant to 28 U.S.C. § 1915(e)(2)(B), denies Turner's "petition for a writ of mandamus" with prejudice with respect to all of the claims except his access to courts claim, which is dismissed without prejudice. As to that claim, it appears to be baseless under applicable precedent, but there is sufficient ambiguity that the Court will allow Turner a chance to attempt to replead the claim.

---

[1]     Docket entries are designated as "D.E. ___," followed by the appropriate district court docket number.

BACKGROUND[2]

Since he was arrested on October 12, 1997, Turner has filed a number of suits in the Illinois state courts and the Northern District of Illinois, alleging a wide-ranging conspiracy to convict and imprison him for violating 720 ILCS 5/11-11, a statutory provision that criminalizes sexual relations within families. After serving approximately five years of his sentence, Turner was placed on mandatory supervised release; he resided in a half-way house for sex offenders and was subject to electronic monitoring for an undetermined period of time. (D.E. 1 at 9.)

When Turner was ultimately released from state custody, he was informed by agents of the Chicago Police Department that he was subject to the requirements of the Illinois Sex Offender Registration Act ("Illinois Registration Act"), 730 ILCS 150/1. (D.E. 1 at 21.) Turner did not comply with the Illinois Registration Act (see, e.g., id.); he maintains that the Illinois Registration Act does not require a person who committed sexual relations within families to register. (Id. at 4-5.) Unfortunately for Turner, the State of Illinois disagrees with his position; he is currently in Cook County Jail in connection with his prosecution for charges of failing to register. (D.E. 21 at 2.) In Illinois, failing to register as a sex offender is a class three felony punishable by one to three years imprisonment. See 730 ILCS 150/3(b); 730 ILCS 150/10.

Turner deems his current suit as a petition for "Writ of Mandamus Joinder With

---

[2]    Turner's Petition is not always a model of clarity, and likely violates Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. Although the Petition likely could be dismissed on that basis alone—see, e.g., Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003)—the Court has attempted to carefully review the pleading, which review makes clear that the case suffers from far more serious and non-correctable defects than a mere pleading deficiency. The Court has attempted to accurately decipher the precise allegations in the Petition, which are cited accordingly. Such citations should not be understood to necessarily endorse the actual validity of the allegations, most of which are inconsistent with various federal and state judgments in prior cases, although the Court assumes their truth arguendo for purposes of review under 28 U.S.C. § 1915.

Complaint of Conspiracy-Fabrication of Evidence-Obstruction of Justice-Denials of Access to the Court-Invidious Discrimination-Cruel and Unusual Punishment-Fraud." (D.E. 1 at 1.) As the title suggests, mandamus is only one component of the suit; a closer examination reveals that the lion's share of the claims Turner presents in this self-styled "mandamus" complaint have already been rejected by several state and federal courts—including a number of district courts in this district. *See, e.g., Turner v. Chicago Police Department, et al.*, No. 98 C 0122 (N.D. Ill.), Order of Aug. 7, 1998 (Zagel, J.); *United States ex rel. Turner v. Groesch*, No. 99 C 3528 (N.D. Ill.), Order of Dec. 27, 2000 (Castillo, J.); *Turner v. City of Chicago, et al.*, No. 99 C 6379 (N.D. Ill.), Order of Jan. 22, 2001 (Marovich, J.), *aff'd by unpublished order* (7th Cir. Jun. 26, 2002); *Turner v. County of Cook, et al.*, No. 01 C 0057 (N.D. Ill.), Order of Jan. 30, 2001 (Zagel, J.).

Turner has placed the "mandamus" label on his complaint in an apparent attempt to obtain another chance to relitigate the validity of his criminal conviction and other issues raised and rejected in his prior suits. To demonstrate the duplicative nature of the present suit, the Court briefly recounts Turner's history of failed litigation relating to his arrest and conviction for sexual relations within families.

A.      Turner's Prior Legal Challenges

1.      The First § 1983 Suit (No. 98 C 0122, Northern District of Illinois)

On January 7, 1998, Petitioner filed his first federal suit related to this matter. (D.E. 1 in Case No. 98 C 0122.) This action was filed months before his state court trial on a number of related sex-crime charges. The complaint alleged that several Chicago police officers and an assistant state's attorney, in violation of 42 U.S.C. § 1983, falsely arrested, tortured, and detained Turner on October 12, 1997, after he was accused of committing a variety of sex offenses against his step-daughter. (*Id.*, D.E. 15 at 1-2; *see also* No. 01-1435, Record on Appeal to the Seventh

Circuit, Vol. 1, Ex. D-1.) The suit also alleged that a number of private parties, including a doctor and a credit union, injured him following his October 12, 1997, arrest. (D.E. 1-2 in Case No. 98 C 0122.) Turner filed motions on February 20, 1998, June 11, 1998, July 24, 1998, August 2, 1998, and August 5, 1998, to amend the complaint to name additional defendants. (*Id.*, D.E. 5, 7, 11, 13.)

On August 10, 1998, Judge Zagel dismissed the complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B), terminating the case. (*Id.*, D.E. 15 at 1.) The court found the false arrest/false imprisonment claims were meritless because the officers had probable cause for the arrest, which precluded liability on a Section 1983 claim in that regard. (*Id.*, D.E. 14 at 4.) The court dismissed the claim against the assistant state's attorney on the grounds that prosecutors enjoy absolute immunity from suit under § 1983 for prosecutorial functions. (*Id.* at 8.) The claims against private parties were dismissed because they were not acting under color of state law; state action is an essential element of a § 1983 claim. (*Id.*)

On October 27, 1998, Turner filed another motion for leave to file an amended complaint; attached to the motion was a 130-page handwritten complaint naming 26 defendants and demanding $242 million in damages. (*Id.*, D.E. 23.) The court denied the motion two days later. (*Id.*, D.E. 24.) Notwithstanding that the case had been dismissed, Turner filed several motions over the following months requesting a court-ordered subpoena and a status hearing for his case. (*Id.*, D.E. 25-31.) These motions were dismissed as moot because his case in its entirety had been terminated months earlier. (*Id.*, D.E. 32.) Finally, on August 2, 1999, Turner filed a motion for reconsideration that asked the court to reinstate his case and permit him to file his 130-page amended complaint. (*Id.*, D.E. 33.) The court denied this motion on August 6, 1999. (*Id.*, D.E. 34.)

2. Turner's Federal Habeas Petition (No. 99 C 3528, Northern District of Illinois)

On May 24, 1999, Turner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.E. 1 in Case No. 99 C 3528.) Turner argued that he was entitled to habeas relief for numerous reasons, several of which are repeated in the instant Petition for "mandamus" relief: (1) Turner's conviction was obtained pursuant to an unlawful arrest; (2) he was not guilty of the offense because he was not actually married to the victim's mother; and (3) his conviction was obtained pursuant to an unconstitutional law. (*Id.*, D.E. 48 at 1-2.) The court dismissed the petition on September 7, 1999, for failure to exhaust available state remedies because Turner had a direct appeal pending in the Illinois courts. (*Id.*, D.E. 20.) His direct appeal in the Illinois courts raised two issues: (1) the trial court erred when it permitted Turner to represent himself without counsel and (2) the State failed to prove that Turner was guilty of sexual relations within families on October 11, 1997 (Count 11 of the indictment). (*See* No. 01-1435, Record on Appeal to the Seventh Circuit, Vol. 1, Ex. D-1.) Turner's direct appeal did not challenge the evidence supporting his conviction on Count 9 of the indictment—on which he was convicted of sexual relations within families between January 1996 and October 10, 1997. (*See id.*)

After the district court dismissed his habeas petition, Turner filed several motions for reconsideration, all of which were denied. (D.E. 25-27, 29-30, 35-36 in Case No. 99 C 3528.) In a minute order issued on December 29, 1999, the court specifically warned Turner that moving to dismiss his state-court appeal "may result in a procedural waiver of his federal habeas rights." (*Id.*, D.E. 29.) In spite of that warning, Turner did not withdraw his motion to dismiss his appeal; thus, the Illinois appellate court dismissed Turner's appeal pursuant to his request. (*Id.*, D.E. 48 at 2.) Turner subsequently filed a motion for leave to refile his habeas petition. (*Id.*, D.E. 30.) The district court granted the motion on July 13, 2000, and it ordered the State to determine

5

whether Turner's voluntary dismissal of his direct appeal precluded further federal habeas review. (*Id.*, D.E. 34.) In the interim, Turner filed a complaint for declaratory judgment and injunctive relief that was rejected. (*Id.*, D.E. 40, 41, 45.) On December 27, 2000, Turner's habeas petition was dismissed because he had not exhausted available state remedies, and because Illinois would no longer permit him to raise those claims, his claims therefore were also procedurally defaulted. (*Id.*, D.E. 48 (Mem. Op. and Order entered Dec. 27, 2000).) Turner requested a certificate of appealability; the court denied that request. (*Id.*, D.E. 49-53.) Finally, Turner appealed the denial of the dismissal of his complaint for declaratory judgment and injunctive relief; the Seventh Circuit denied this appeal on March 27, 2001. (*Id.*, D.E. 58.)

3.      The Second § 1983 Suit (No. 99 C 6379, Northern District of Illinois)

On September 27, 1999, Turner filed another § 1983 suit that made many of the same allegations advanced in his first § 1983 suit. (D.E. 1 in Case No. 99 C 6379.) After the court denied Turner's motion for leave to file *in forma pauperis*, the case was eventually dismissed without prejudice on January 27, 2000. (*Id.*, D.E. 7.) On July 21, 2000, Turner filed an additional complaint and other requests, which the court denied as moot because the case had been dismissed. (*Id.*, D.E. 9, 10.) On August 25, 2000, Turner filed a notice of appeal, and on September 11, 2000, he filed a motion for relief from judgment. (*Id.*, D.E. 12, 16.) The motion for relief from judgment argued that Turner had not received the court's orders between October 12, 1999 and January 27, 2000. (*Id.*, D.E. 16.) The district court accepted this representation as true, and evaluated the suit on the merits.

Pursuant to 28 U.S.C. 1915(e)(2)(B), the court dismissed the suit as frivolous and malicious because it was an attempt to relitigate previously dismissed claims. (*Id.*, D.E. 17.) The district court determined that Turner could not raise claims that were, or could have been,

raised in the first suit. (*Id.*) Three months later, Turner moved for reconsideration pursuant to Fed. R. Civ. P. 60(b); the court denied the motion. (*Id.*, D.E. 38-39.) Turner filed a notice of appeal that was only timely with respect to the denial of his Rule 60(b) motion. *Turner v. City of Chicago*, 39 Fed. Appx. 428 (7th Cir. 2002) (unpublished). The Seventh Circuit affirmed. *Id.*

4. The 2001 Complaint for Declaratory Judgment and Injunctive Relief (No. 01 C 0057, Northern District of Illinois)

On January 3, 2001, Turner filed a complaint for declaratory judgment and injunctive relief to enjoin various state and municipal defendants from (1) enforcing 720 ILCS 5/11-11(a)(2)(iii), which prohibits sexual relations within families and (2) preventing Turner from attending divorce court proceedings. (D.E. 1 in Case No. 01 C 0057.) Turner argued that an Illinois appellate court had determined that 720 ILCS 5/11-11 was unconstitutionally vague. (*Id.* at 2 (citing *People v. Williams*, 515 N.E.2d 388 (Ill. App. Ct. 1987).) He also claimed that the state's refusal to allow him to attend divorce court proceedings violated his rights to due process, equal protection, and right to access to the courts. (*Id.* at 3-4.)

On January 30, 2001, this complaint was dismissed as frivolous and, because it was his "third strike" under § 1915(g), the court barred Turner from filing further suits or appeals (other than writs of habeas corpus) in federal courts while incarcerated without full prepayment of the filing fee, unless he was in imminent danger of serious physical injury. (*Id.*, D.E. 7.) Turner filed a motion to vacate and a motion to file an amended complaint, both of which were denied by the court. (*Id.*, D.E. 15.) Turner filed a notice of appeal, but the Seventh Circuit dismissed this appeal when he failed to file an opening brief, instead filing a request to file an amended complaint in the district court. (*Id.*, D.E. 24.)

On January 31, 2002, Turner filed a motion for mandamus. (*Id.*, D.E. 20.) The court denied this motion again on the grounds that he was barred by § 1915(g) from filing any further

suits while in prison without prepaying the filing fees. (*Id.*, D.E. 21.)

B.    The Instant Matter (No. 05 C 2890, Northern District of Illinois)

The Petition is not always easy to decipher, but after charitable and careful review, the Court believes that it raises six issues: (1) Turner's conviction for committing sexual relations with families was based on unreliable evidence (D.E. 1 at 1-2); (2) that conviction violated the Fifth, Eighth, and Fourteenth Amendments (*id.* at 2-3); (3) the State of Illinois has incorrectly concluded that Illinois law requires Turner to register as a sex offender (*id.* at 5, 8); (4) conditioning Turner's release from prison on registering as a sex offender violated the Fifth, Eighth, and Fourteenth Amendments (*id.* at 6); (5) Turner was denied access to the courts (the precise basis for this claim is unclear, as discussed further below); and (6) Turner was improperly denied early release when he was serving his sentence for sexual relations within families. (*Id.* at 13-17.) Turner requests a variety of remedies, including: (1) an order prohibiting Defendants from publicly stating that Turner is a sex offender or was convicted of a sex offense for the purposes of the Illinois Registration Act (*id.* at 23); (2) enjoining Defendants from requiring Turner to register pursuant to the Illinois Registration Act (*id.*); (3) enjoining Defendants from prosecuting Turner for failing to register pursuant to the Illinois Registration Act (*id.* at 23-24); and (4) reinstating Turner's prior complaint for compensatory and punitive damages. (*Id.* at 24.)

Turner filed for leave to proceed *in forma pauperis* on the same day he filed this Petition. (D.E. 4.) On September 21, 2005, Turner filed a motion to withdraw his application to proceed *in forma pauperis* on the grounds that the Court had not yet ruled on his *in forma pauperis* motion. (D.E. 10.) Turner also included a number of allegations that bear no relationship to the Court's decision to grant or deny his original motion. (*See id.* at 2-3.) On October 6, 2005, the Court denied Turner's motion to withdraw his *in forma pauperis* application without prejudice

8

(D.E. 12.) At that time, the Court informed Mr. Turner that the staff attorney's office had recommended that his case be summarily dismissed as frivolous, and that the Court intended to review the substance and history of the underlying cases in greater detail before assessing whether summary dismissal was appropriate.

On October 18, 2005, Turner filed a motion for injunctive relief requesting the Court to enjoin the State's Attorney from prosecuting him for failing to register as a sex offender. (D.E. 13.) This motion was stricken six days later, with the Court informing Turner's new wife, who appeared because he was incarcerated, that this Court had been presented with no basis to interfere with ongoing state criminal proceedings. (D.E. 17.) On November 7, 2005, Turner filed a motion for leave to file a complaint for declaratory relief concerning an unconstitutional statute. (D.E. 18.) The Court ordered this motion stricken for failure to comply with the Court's three-day notice requirement. (D.E. 20.)

On November 15, 2005, Turner refiled his motion to withdraw his application to proceed *in forma pauperis* and again requested that the Court permit him to pay the filing fee on an installment plan. (D.E. 21.) Turner transformed this simple procedural motion into a vehicle for revisiting the allegations in the underlying Petition: at least eleven of the fourteen pages restated allegations from the complaint or perhaps even stated additional allegations and claims that Turner would have proposed to include in the case. (*Id.*) This motion was dismissed without prejudice on November 23, 2005 for failing to comply with the three-day rule. (D.E. 22.)

ANALYSIS

A     Standard of Review

Ordinarily, a plaintiff must prepay fees or provide security therefor; otherwise, the Court has the discretion to impose sanctions, including dismissing the complaint without prejudice.

9

*See* Local Rule 3.3. However, 28 U.S.C. § 1915, and Local Rule 3.3 as well, permit a court to authorize the commencement of a suit, action, or proceeding without prepayment of fees by a person who submits an affidavit that demonstrates that they cannot afford to pay such fees.

Once a person files an application to proceed *in forma pauperis*, the Court must analyze the claims advanced in the complaint and dismiss them if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). This independent review is mandatory, even in cases where the plaintiff subsequently pays filing fee or any portion thereof. 28 U.S.C. § 1915(e)(2); *see also Brinson v. McKeeman*, 992 F. Supp. 897, 904 & n.18 (W.D. Tex. 1997) (once a plaintiff files leave to proceed *in forma pauperis*, the court must review the complaint under § 1915(e)(2), even if the plaintiff subsequently pays the filing fee).

A claim is frivolous within the meaning of Section 1915(e)(2)(i) when it, *inter alia*, lacks an arguable basis in law or in fact. *See, e.g., Baker v. AME Church Judicial Council*, 320 F. Supp. 2d 786, 788 (N.D. Ind. 2004) (collecting cases, including *Denton v. Hernandez*, 504 U.S. 25, 31 (1992)). In addition, a complaint that seeks to relitigate previously dismissed claims is both frivolous and malicious. *See, e.g., Okoro v. Bohman*, 164 F.3d 1059, 1064 (7th Cir. 1999).

The standard of review for failure to state a claim under 1915(e)(2)(B)(ii) is the same standard used when reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See DeWalt v. Carter*, 224 F.3d 607, 611-12 (7th Cir. 2000). In determining whether a plaintiff's complaint fails to state a claim, a court assumes that the plaintiff's factual allegations are true and draws all reasonable inferences in his favor. *See Strasburger v. Bd. of Educ.*, 143 F.3d 351, 359 (7th Cir. 1998). A complaint is required to set forth "a short and plain statement of the claim that will

give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (citations and internal quotation marks omitted).

The Prison Reform Litigation Act ("PRLA"), Title VIII of Pub. L. 104-134, 110 Stat. 1321-66 (effective Apr. 26, 1996), placed additional restrictions on § 1983 actions by adding a new section, 28 U.S.C. § 1915A, and by amending 28 U.S.C. § 1915. First, regardless of whether the prisoner is proceeding *in forma pauperis*, 28 U.S.C. § 1915A requires the Court to review any complaint filed by a prisoner seeking redress from a governmental entity or officer or employee of a governmental entity. "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief." *Id.*; *see also King v. Fed. Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005). Second, if the prisoner is proceeding *in forma pauperis*, he is required to prepay part of the full amount of the filing fee and ultimately pay the entire amount according to a detailed formula for deducting funds from the prisoner's account. 28 U.S.C. § 1915(b). Finally, 28 U.S.C. § 1915(g) prohibits a prisoner from bringing a § 1983 action *in forma pauperis* if three previous complaints that were filed while the prisoner was incarcerated or detained have been dismissed because they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury. *See Montgomery v Davis*, 362 F.3d 956, 956 (7th Cir. 2004) (per curiam). The "imminent danger" exception to § 1915(g) is an "escape hatch" that is only available "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

B. Legal Discussion

    1. Applicability of §§ 1915 and 1915A

Turner initially presented this action for filing and requested leave to proceed *in forma pauperis*. He has not subsequently paid the filing fees; instead, he has moved to withdraw his request for leave to proceed *in forma pauperis* and to instead pay the filing fees on an installment plan. Because Turner initially requested leave to proceed *in forma pauperis*, the Court is obligated under § 1915(e)(2) to determine whether the claim is frivolous or malicious, fails to state a claim, or seeks damages against an immune defendant. Turner cannot escape this requirement by withdrawing his motion to proceed *in forma pauperis* and requesting to pay in installments; independent review is mandatory even in cases where a person subsequently pays the entire fee "or any portion thereof." 28 U.S.C. § 1915(e)(2). This statutory command logically encompasses Turner's offer to pay the fee in installments. Thus, for the reasons stated below, the Court has an obligation to dismiss the complaint because it is frivolous and malicious and fails to state a claim upon which relief can be granted. The Court may also be required to review the complaint under § 1915A, given that Turner is back in prison again, but the Court need not determine whether § 1915A additionally bars this suit, given that it is barred in any event under § 1915(e)(2). Turner's complaint may also be barred under the "three strike" provision of § 1915(g), given that he is back in prison again and his suit does not appear to present any of the exceptions to the three-strike bar. Again, the Court need not assess whether summary dismissal is also appropriate on that additional basis, given that dismissal of the suit is independently required under § 1915(e)(2).

    2. Systemic Deficiencies in the Complaint

        a. Statute of Limitations

Section 1983 does not contain an express statute of limitations—the forum state's

limitations period for personal injury claims is the applicable rule. *See Wilson v. Garcia*, 471

U.S. 261, 276 (1985). "The correct statute of limitations for Section 1983 actions filed in Illinois

is two years as set forth in 735 ILCS § 5/13-202." *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th

Cir. 2001) (citing *Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998)). Thus, any

causes of action Turner may have had relating to events that occurred before May 16, 2003 are

time-barred.

        b.    *Res Judicata*

The Court may dismiss a suit for failing to state a claim if the suit is barred by *res*

*judicata. See, e.g., Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995)

(affirming dismissal of case pursuant to Rule 12(b)(6) on the grounds of *res judicata*). "*Res*

*judicata* bars not only those issues which were actually decided in a prior suit, but also all issues

which could have been raised in that action." *Id.*, 49 F.3d at 338 (citing *Shaver v. F.W.*

*Woolworth Co.*, 840 F.2d 1361, 1364 (7th Cir. 1988)). The doctrine of *res judicata* "encourages

reliance on judicial decisions, bars vexatious litigation and frees the courts to resolve other

disputes." *Shaver*, 840 F.2d at 1367 (internal quotation marks and citation omitted). Substantial

precedent teaches that the *res judicata* principle is "considered a rule of 'fundamental and

substantial justice . . . which should be cordially regarded and enforced by the courts.'" *Id.*

(quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981)). A plaintiff's second

lawsuit is barred by *res judicata* when there is "(1) [a] judgment on the merits in an earlier

action; (2) an identity of the parties or their privies in the two suits; and (3) an identity of the

cause of action between both suits." *Brzostowski*, 49 F.3d at 338 (collecting cases).

The "first" lawsuit for the purposes of the Court's *res judicata* analysis is *Turner v.*

*Chicago Police Dept., et. al*, No. 98 C 0122; Turner received a final judgment on the merits in that first lawsuit. A second candidate, at a minimum, is *Turner v. City of Chicago, et al.*, No. 99 C 6397. Turner received a decision on the merits against him in that case too—with Judge Marovich barring it as frivolous and malicious because it was an attempt to relitigate previously dismissed or waived claims. (*See* D.E. 32 in Case No. 99 C 6397, at 6-7.) A judgment on the merits is one "based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form. Traditionally, a judgment is on the merits if it completely disposes of the underlying cause of action." *Harper Plastics, Inc. v. Amoco Chems. Corp.*, 657 F.2d 939, 943 (7th Cir. 1981) (internal citations omitted). Turner received a judgment on the merits against him in his first suit, No. 98 C 0122, and in No. 99 C 6379 as well.

Second, as discussed above, Ward's present lawsuit, filed against multiple defendants, names many of the same defendants as in his prior lawsuits. "[T]he Government, its officers, and its agencies are regarded as being in privity" for *res judicata* purposes. *Estevez v. Nabers*, 219 F.2d 321, 323 (5th Cir. 1955) (collecting federal appellate cases); *accord, e.g., Miller v. American Int'l Group, Inc.*, No. 3:04-CV-1417-P, 2005 WL 1131110, at *5 (N.D. Tex. May 9, 2005) (quoting *Estevez*, 219 F.2d at 323); *Mandarino v. Pollard*, 718 F.2d 845, 850 (7th Cir. 1983) (stating that "[a] government and its officers are in privity for purposes of *res judicata*") (collecting cases).

Finally, in terms of whether the present matter has "identity" with Turner's prior lawsuits, "[t]wo claims are one for the purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations." *Brzostowski*, 49 F.3d at 339 (collecting cases); *see also Shaver*, 840 F.2d at 1365 (concluding that where the two relevant lawsuits involved a "single core of operative facts, they constitute identical causes of action for *res judicata* purposes."). The

14

operative facts in all of Turner's suits are virtually identical. His most recent suit raises new claims concerning Illinois' sex-offender registry and his right to access the judicial process, but the bulk of the Petition is a challenge to his arrest and conviction; his challenges have been raised and rejected at least four times by three previous courts in this district. If the Court had any doubts about this issue, a similar suit was previously dismissed with prejudice on *res judicata* grounds, which itself has *res judicata* effect. *See* D.E. 32 in No. 99 C 6379, at 4-7.[3]

      c.    Sovereign Immunity

Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. *See Loeffler v. Frank*, 486 U.S. 549, 554 (1988) ("Absent a waiver of sovereign immunity, the Federal Government is immune from suit") (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Fed'l Housing Admin. v. Burr*, 309 U.S. 242, 244 (1940). Section 1983 does not provide a remedy against federal officials or agencies and, even if it did, it does not waive the federal government's sovereign immunity. *Cf. Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). While *Bivens* provides a cause of action against federal officials for constitutional torts, it does not waive sovereign immunity for actions against the United States and its agencies and departments. *See Bivens*, 403 U.S. at 410 ("[H]owever desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit.") (Harlan, J. concurring in judgment); *accord, e.g., Jaffee*

---

[3]     The Court does not suggest that *res judicata* is a bar as against each and every putative respondent to the instant "mandamus" petition. For example, the inclusion of various federal law enforcement agencies and/or agents, as well as the inclusion of the entire United States Department of Justice, appear to be new additions to Turner's litigation. As explained elsewhere, the allegations against the federal law enforcement agents and/or agencies are frivolous for other reasons.

*v. United States*, 592 F.2d 712, 717-18 (3d Cir. 1979); *Duarte v. United States*, 532 F.2d 850, 852 (2d Cir. 1976). The FTCA waives sovereign immunity for some suits against the United States; however, it does not permit suits against agencies seeking equitable relief for alleged constitutional torts. *See* 28 U.S.C. § 1346(b) (suit must be against United States itself for money damages); *FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (constitutional torts not cognizable under FTCA). Thus, the United States Social Security Police, the Federal Bureau of Investigation, and United States Marshals Service (as to whom, in any event, there is seemingly no meaningful or rational basis for inclusion in this suit) are immune from Turner's suit.

The defendants that are state agencies (*i.e.*, Illinois Department of Corrections, Illinois Prisoner Review Board, Illinois State Police) also are not amenable to § 1983 suits. *See Will*, 491 U.S. at 64, 71 (States not "persons" under § 1983, and a suit versus an official in his or her official capacity is a suit against the official's office as well); *Quern v. Jordan*, 440 U.S. 332, 342-43 (1979) (§ 1983 does not abrogate States' Eleventh Amendment immunity). However, under *Ex Parte Young*, 209 U.S. 123 (1908), a person may seek injunctive relief against a state official; consequently, the Illinois Attorney General is not immune from this suit on this basis.

The municipal defendants are immune from § 1983 suits based on *respondent superior*; a municipality is not liable unless the alleged constitutional violation is official policy rather than abuses on the initiative of individual agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Since Turner is complaining about specific acts of specific officers, rather than city-wide or county-wide practices, Cook County and the City of Chicago are immune from this suit. Further, to the extent Turner would purport to relitigate his failed claims against the prosecutors who initially worked in the proceedings in which he was convicted of his felony sex offenses, those prosecutors remain absolutely immune from Turner's money damages claims, as Judge

Zagel explained many years ago. *See, e.g., Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).

These claims also would independently be time-barred under the applicable statute of limitations.

      d.    The Rule of *Heck* v. *Humphrey*

The rule of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), bars the use of § 1983 to mount

a collateral attack on a conviction. Until the sentence has been reversed on direct appeal,

expunged by executive order, declared invalid by a state tribunal, or called into question by the

issuance of a writ of habeas corpus, a cause of action for damages "does not accrue." *Id.*, 512

U.S. at 487, 490. "It is irrelevant that [the plaintiff] disclaims any intention of challenging his

conviction; if he makes allegations that are inconsistent with the conviction's having been valid,

*Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003)

(collecting cases). Furthermore, the *Heck* rule is not limited to request for damages—it is equally

applicable to Turner's request for mandamus relief. *See Miller v. Ind. Dep't. of Corr.*, 75 F.3d

330, 331 (7th Cir. 1996) ("the issue," when applying *Heck*, "is not the relief sought, but the

ground of the challenge"); *Jones v. Watkins*, 945 F. Supp. 1143, 1151 (N.D. Ill. 1996) (rejecting

plaintiff's request for declaratory judgment review, because plaintiff "cannot seek to accomplish

by a section 1983 declaratory judgment what he must accomplish through a writ of habeas

corpus" (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487-90 (1973)). As discussed below, a

number of Turner's claims directly challenge or presume the invalidity of his criminal

conviction.

      e.    Mandamus Remedy Not Available

Fed. R. Civ. P. 81(b) abolished the common-law writ of mandamus. Section 1361 of

Title 28 of the United States Code gives federal district courts original jurisdiction over "an

action in the nature of mandamus to compel an officer, employee, or agency of the United States

to perform a duty owed to the plaintiff." Mandamus relief is not available against state and local officials. *See In re Wolenski*, 324 F.2d 309, 309 (3d Cir. 1963) (per curiam) (district court has no jurisdiction to issue a writ of mandamus compelling action by a state official); *Robinson v. Illinois*, 752 F. Supp. 248, 248-49 (N.D. Ill. 1990) (Shadur, J.) (collecting federal appellate cases).

A plaintiff seeking mandamus relief as against a federal officer must show three things: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available. *See Scalise v. Thornburgh*, 891 F.2d 640, 648 (7th Cir. 1989) (collecting cases). "[T]he judiciary, through a writ of mandamus, cannot compel a federal official to perform any function unless the official is clearly directed by law to do so." *Banks v. Sec'y of Ind. Family & Social Servs. Admin.*, 997 F.2d 231, 244 (7th Cir. 1993). Putting aside all of the other problems in the case, Turner has not established, at a minimum, the first two of these elements. In this regard, he has not established a "clear right" to the relief sought. He also has also failed to identify any plainly defined, non-discretionary duties of any of the named federal Defendants (their legal relevance to the case is tangential, at best, and more fairly described as non-existent).

f.      Limits on Federal Injunctions on State-Court Proceedings

The Anti-Injunction Act, 28 U.S.C. § 2283, provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." While § 1983 expressly authorizes injunctions and thus falls under the first exception to the Anti-Injunction Act, *see Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972), the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), severely limits the authority of a federal court

to enjoin pending state criminal proceedings. *See, e.g., Indiana v. Haws*, 131 F.3d 1205, 1210 (7th Cir. 1997) (refusing to provide declaratory judgment concerning a defendant's right to counsel because the effect of such judgment would interfere with ongoing state criminal proceedings). Federal courts must presume that the "pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Trainor v. Hernandez*, 431 U.S. 434, 441 (1977) (internal quotation marks and citation omitted). "Only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process . . . [and] such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Id.* at 442 n.7 (internal citations and further quotation marks omitted). The *Younger* doctrine also applies to actions for declaratory judgment that interfere with state prosecutions. *Haws*, 131 F.3d at 1210. Turner offers no basis to believe that the courts of the State of Illinois are incapable of adjudicating the issues that Turner would present here—some of which, by the way, clearly appear to be questions about the meaning of Illinois statutes, which are not issues for this district court to properly resolve in any event. Consequently, no basis has been shown for this Court to interfere with the State of Illinois's ongoing prosecution of Turner for violating the Illinois Registration Act.

3.      Defects With Turner's Specific Claims

Turner's claims suffer from multiple defects. Representative defects are discussed below. In addressing these defects, the Court does not mean to pretend that this is necessarily a comprehensive list, or that the various putative federal and state defendants could not identify others if they were required to answer, in contravention to the protections Congress intended for

19

them to have under 28 U.S.C. §§ 1915 and 1915A.

Petitioner's first claim—that he was falsely arrested and detained by the Chicago police—and his second claim—that his conviction was unconstitutional because it was based upon false evidence and legal errors—are barred by the *Heck* rule. These issues were both raised in his federal habeas petition, which was denied for failing to exhaust available state remedies and because this claim was procedurally defaulted. Turner cannot circumvent a prior habeas ruling (or the requirement that such issues be addressed through habeas corpus or other appropriate state vehicles) by filing a § 1983 suit. *Heck* bars the use of § 1983 to mount a collateral attack on a conviction. Until the sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by the issuance of a writ of habeas corpus, a cause of action for damages "does not accrue." *Id.*, 512 U.S. at 487, 490. The *Heck* rule is not limited to request for damages—it is equally applicable to Turner's request for mandamus relief. *See Miller*, 75 F. 3d at 330; *Jones*, 945 F. Supp. at 1151. These claims are also barred by the doctrine of *res judicata* (*see, e.g.*, D.E. 32 in Case No. 99 C 6379, at 4-7), and also, independently, by the two-year statute of limitations.

Turner's third claim—*i.e.*, that he is not actually required to register as a sex offender under Illinois law—is a state law claim; he does not, nor seemingly could he, advance a colorable argument as to why the federal constitution prohibits Illinois from requiring persons who are convicted of felony crimes concerning sexual relations within families to have to register as sex offenders. *See, e.g., Conn. Dep't. of Pub. Safety v. Doe*, 538 U.S. 1 (2003) (state has discretion over which crimes give rise to registration requirements). The lack of any federal question—given that Turner in essence appears to be contending that the State of Illinois and its officials have simply made an improper or incorrect interpretation of state law, and therefore

Turner should not be required to register as a sex offender—is fatal to his Section 1983 claim. *See, e.g., Germano v. Winnebago County*, 403 F.3d 926, 929 (7th Cir. 2005) (state's violation of its own laws does not violate the Constitution; any remedy lies in state court); *Eftekhara v. Ill. Dep't. of Children & Family Servs.*, 661 F. Supp. 522, 529 (N.D. Ill. 1987) ("'The enforcement of state regulations is to be done through the state court system and not in an action under § 1983.'") (quoting *Goodrich v. Newport News Sch. Bd.*, 743 F.2d 225, 227 (4th Cir. 1984)). This claim is also barred by *Younger* abstention principles because Turner is requesting relief that would effectively nullify Illinois' ongoing criminal prosecution and he offers no colorable basis to suggest that he is incapable of raising his arguments and putative defenses in those proceedings and having them fairly considered.

Moreover, to the extent this Court's reading of the Illinois Registration Act is even germane, it is likely worth adding that Turner's substantive claim about the Illinois Registration Act appears to be baseless. Under 730 ILCS 150/2, a "sex offender" is any person who is charged "with a sex offense set forth in [730 ILCS 150/2(B)]" and "is convicted of such offense or an attempt to commit such offense." Furthermore, 730 ILCS 150/2(B)(1.8) lists as a sex offense any violation or attempted violation of 720 ILCS 5/11-11 committed on or after June 1, 1997. Sex offenders are required to register with the sheriff in the county in which they reside or are temporarily domiciled; failure to register in accordance with the terms set forth in the Illinois Registration Act is a class three felony. *See* 730 ILCS 150/3; 730 ILCS 150/10. Turner was convicted of two counts of violating 720 ILCS 5/11-11: the first count concerned sexual relations between the dates of January 1996 and October 10, 1997 and the second count was for sexual relations on October 11, 1997. (*See* No. 01-1435, Record on Appeal to the Seventh Circuit, Vol. 1, Ex. D-1.) Because Turner was convicted of violating 720 ILCS 5/11-11 on October 11, 1997

(count 11 of the indictment), he committed a sex offense and appears to clearly be a sex offender for the purposes of 730 ILCS 150/2 and the registration requirements of the Illinois Registration Act.

Turner's fourth claim is a constitutional challenge to the Illinois Registration Act. Both the Illinois and federal courts have routinely upheld registration acts against such constitutional challenges. *See, e.g., Smith v. Doe*, 538 U.S. 84 (2003) (retroactive application of sex offender registration act does not violate *ex post facto* clause); *People v. Cornelius*, 821 N.E.2d 288 (Ill. 2004) (finding that the internet dissemination provisions of the Illinois Registration Act do not violate constitutional right to privacy or substantive due process, nor do they violate equal protection principles or constitute punishment in violation of the *ex post facto* clause); *People v. Malchow*, 739 N.E.2d 433 (Ill. 2000) (rejecting constitutional challenges to Illinois Registration Act based on the *ex post facto* clause, cruel and unusual punishment prohibition, right to privacy, double jeopardy prohibition, and due process and equal protection clauses); *see also Kansas v. Hendricks*, 521 US 346 (1997) (involuntary commitment as sexually violent predator not unconstitutional, and does not constitute criminal punishment or violate Double Jeopardy prohibition or the *ex post facto* clause).

Specifically with respect to Turner's repeated invocation of the Eighth Amendment, it is settled that state laws requiring registration of convicted sex offenders do not impose "punishment" and therefore do not implicate the Eighth Amendment. *See, e.g., Smith*, 538 U.S. at 106; *see also Hendricks*, 521 U.S. at 346 (holding that indefinite civil commitment under state law as an uncontrollable sexual predator is not punishment). If indefinite civil commitment of sexual predators is not prohibited by the Eighth Amendment, it follows that the lesser step of requiring sex offenders to register with the police is likewise not punishment. Moreover, if

Eighth Amendment strictures were implicated—and under the precedent cited above, they are not—precedent teaches that the applicable standard is whether the challenged punishment is contrary to "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958); *accord Atkins v. Virginia*, 536 U.S. 304, 311-12 (2002). The Supreme Court has repeatedly acknowledged that "'[s]ex offenders are a serious threat in this Nation,'" *Conn. Dep't. of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003) (quoting *McKune v. Lile*, 536 U.S. 24, 36 (2002) (plurality opinion)); the Supreme Court also has repeatedly instructed that "'[t]he victims of sex assault are most often juveniles,' and '[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sexual assault.'" *Conn. Dep't. of Pub. Safety*, 538 U.S. at 4 (quoting *McKune*, 536 U.S. at 32-33 (plurality opinion)). Virtually every state maintains a sex offender registry and the Federal Bureau of Investigation maintains a federal database that tracks the movement of sex offenders. Under such circumstances, the universality of registration precludes any serious argument that a registration requirement violates the "evolving standards of decency" in our Nation.

Turner's other vague putative constitutional challenges appear to be clearly baseless. The Supreme Court has already determined that registration statutes do not violate the procedural component of the Due Process Clause. *See Conn. Dep't. of Pub. Safety*, 538 U.S. at 4. As for the substantive component of the clause, several courts have already rejected substantive due process challenges to registration requirements. *See, e.g., Doe v. City of Lafayette*, 377 F.3d 757, 758 (7th Cir. 2004) (en banc) (city may, consistent with due process, prohibit a sex offender from entering a public park); *Doe v. Moore*, 410 F.3d 1337, 1346 (11th Cir. 2005) (registration statute does not implicate fundamental rights and is rationally related to valid legislative purpose);

*Gunderson v. Hvass*, 339 F.3d 639, 643 (8th Cir. 2003) (registration statute does not infringe upon fundamental right and survives rational-basis review because state has interest in keeping track of sex offenders); *Cutshall v. Sundquist*, 193 F.3d 466, 481 (6th Cir. 1998) (registration does not infringe upon fundamental liberty such as the right to privacy and thus does not violate due process). Besides repeating the words "due process" numerous times, Turner does not even attempt to identify a liberty interest at stake nor does he explain why the state's interest is not sufficient to overcome that interest. *Accord, e.g., Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

Finally, the Registration Act does not violate the Equal Protection Clause. A group classification by legislative act is analyzed under a strict scrutiny standard only if the classification infringes fundamental rights or involves linedrawing by the government on a suspect basis, such as race or national origin. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). The Illinois Registration Act does not unfairly burden any fundamental right, and drawing lines in society between people who have been criminally convicted of sex offenses and those people who have not been so convicted does not involve a suspect basis for drawing distinctions rationally related to that proven history of criminal sexual misconduct. *See, e.g., United States v. LeMay*, 260 F.3d 1018, 1030 (9th Cir. 2001). Consequently, the classification is reviewed under a rational basis test. *See Cleburne*, 473 U.S. at 442. A statute is rational "when there is any reasonably conceivable state of facts that could provide a rational basis" for it. *FCC v. Beach Communications*, 508 U.S. 307, 313 (1993). There is more than a "conceivable state of facts" supporting Illinois's law—the Illinois Registration Act is rationally related to the danger posed to the community by recidivist sex offenders. *See Conn. Dep't. of Pub. Safety*, 538 U.S. at 4 (quoting *McKune*, 536 U.S. at 32-33 (plurality opinion)); *Smith*, 538

U.S. at 102. To the extent that Turner could be understood to be advancing a "class of one" theory under *Willowbrook v. Olech*, 528 U.S. 562 (2000), his claim fails because he does not identify any individual who is similarly situated who was treated differently, nor does he explain why any difference in treatment lacked rational basis. *See Levenstein v. Salafsky*, 414 F.3d 767, 776 (7th Cir. 2005).

Turner's fifth claim is a putative denial of access to the courts claim. The exact gravamen of this claim is difficult to discern. Aspects of it seem patently frivolous under the law, such as Turner's apparent suggestion that he has been denied the ability to enter courthouses because he was incarcerated pursuant to a judgment of the Illinois courts not shown to be defective through appropriate processes of law. Similarly frivolous is Turner's apparent suggestion that diverse federal and state law enforcement personnel have denied him access to the courts because he fears that if he goes to a courthouse, any warrants issued in connection with his criminal charges for failing to register as required by Illinois law might be discovered and/or executed by law enforcement personnel at the courthouses. The right of reasonable access to the courts does not entail immunity from arrest warrants issued by lawful processes of the State of Illinois and the courts themselves.

Less facially frivolous, but still defective under the law, are Turner's cursory suggestions that he was denied access to the courts when prison officials allegedly refused to provide him with access to a notary and legal papers that he requested. This claim fails because Turner has failed to outline or adumbrate any basis to conclude that he has suffered actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349-51 (1996). Precedent teaches that "[p]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the

25

courts.'" *Id.* at 351 (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). In this regard, the Supreme Court has taught that the right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, to succeed on a denial of access case, the plaintiff must at least identify or suggest some basis to believe he has "a 'nonfrivolous,' 'arguable' underlying claim." *Id.* (quoting *Lewis*, 518 U.S. at 353 and n.3); *accord, e.g., May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2004) (explaining that a plaintiff must offer some basis to suggest "that state action hindered his or her efforts to pursue a non-frivolous legal claim and that consequently the plaintiff suffered some actual concrete injury") (citing *Lewis*, 518 U.S. at 350-54). Not only has Turner failed to identify or suggest any meritorious claim, he has repeatedly inundated this Court and others in this district with motions and filings that have been uniformly dismissed as baseless, frivolous, and malicious. The present Petition appears to be a rehash of those prior actions, perhaps laced with some additionally frivolous updates such as his suggestion that law enforcement personnel are denying him access to the courts because he is afraid to enter a courthouse, where any outstanding arrest warrants might more readily be discovered. None of this squares with the teaching of cases such as *Lewis* identified above. While Petitioner will be given leave to attempt to actually suggest some basis for a viable underlying claim implicated by an alleged denial of access to the courts, Petitioner is respectfully advised that another attempt to restate allegations that have been repeatedly dismissed as frivolous and malicious will not comply with the minimal threshold set forth in applicable precedent and well could implicate the sanctions provisions of rules such as Fed. R. Civ. P. 11.

Turner's final claim is that he was improperly denied early release when he was serving his sentence for sexual relations within families. This claim is moot because Turner has already

completed his sentence for the underlying crime. *See generally Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998) (citing *Spencer v. Kemna*, 523 U.S. 1 (1998)). In addition, this claim is not cognizable under § 1983 because it addresses the lawfulness of his confinement; the exclusive federal remedy for such claims is a writ of habeas corpus. *See Miller*, 75 F.3d at 331. Furthermore, to the extent that this claim is based in state law, it is not cognizable under habeas or § 1983. *See, e.g., Germano*, 403 F.3d at 926.

4.    Future Considerations

The Seventh Circuit has repeatedly discussed the systemic burdens that frivolous prisoner suits impose on other litigants and on the legal system generally. Thus, in the course of barring certain prisoners from filing any further suits until they satisfied sanctions imposed in connection with repeated, frivolous claims, the Seventh Circuit recently wrote:

> This [abusive filing of frivolous suits] must stop. "Every paper filed . . . no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interest of justice." *In re McDonald*, 489 U.S. 180, 184 (1989)).

*Montgomery v. Davis*, 362 F.3d 956, 957 (7th Cir. 2004) (per curiam). Fairness to other litigants (whose cases have been displaced so that the frivolous claims Turner has repeatedly brought can be addressed again and again) dictates that this Court discharge its burden of ensuring that limited judicial resources are not repeatedly wasted on the analysis of frivolous claims. In this regard, the Court notes that Turner's history of failed suits is now sufficiently long that it requires retrieval of age-old files in a sort of quasi-juridical archeology endeavor through cases previously dismissed as frivolous and malicious. The Court therefore respectfully advises Mr. Turner that if he continues to file frivolous and malicious claims, especially those which challenge the underlying validity of his criminal conviction or attempt to relitigate issues settled in previous suits, he may face sanctions that will have financial consequences and may limit his ability to

bring forth meritorious claims, to the extent that any such claims exist. *Accord Montgomery*, 362 F.3d at 957.

## CONCLUSION

For the aforementioned reasons, Petitioner's motions are denied and the case is dismissed along the lines outlined above. Turner has thirty days to attempt to replead a denial-of-access claim consistent with applicable precedent discussed herein. If he fails to do so, the case will be dismissed in its entirety with prejudice for failure to prosecute and also, independently, for failure to present any colorable claim. The application for leave to proceed *in forma pauperis* (D.E. 4) and the motion to pay the filing fee in installments are denied as moot, at least at the present time. In the event Turner attempts to state a viable access to the courts claim, the court presumably will need to assess the viability of proceeding, pursuant to 28 U.S.C. § 1915, as well as any related issues under 28 U.S.C. § 1915A. Finally, the Court notes that other claims unrelated to the "mandamus" petition may be the subject of other suits; however, those other suits would appear to be subject, given Turner's history of frivolous and malicious litigation, and his renewed prisoner status, to the three-strike rule and its parameters. *See* 28 U.S.C. § 1915(g); *Montgomery*, 362 F.3d at 956; *Lewis*, 279 F.3d at 531.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated:  /2 - 2 - 05

28